TITLE GUARANTEE AND TRUST COMPANY, as Trustee, Appellant, *v.* 2846 BRIGGS AVENUE, INC., Respondent. Impleaded with Others.

Argued June 14, 1940; decided July 24, 1940.

*I. Nathanson, George A. Roland* and *Alexander Boskoff* for appellant. Section 1077-cc of the Civil Practice Act having been amended in 1937, an intent to change or clarify

its effect must be attributed to the Legislature. The effect of the change was to prevent an increase in the rate of interest specified in the obligations mentioned in the statute. (*Franklin Title & Mortgage Co.* v. *Shernov*, 250 App. Div. 267; *Elltan Realty Co.* v. *Irving Trust Co.*, 252 App. Div. 882; *Archer* v. *Equitable Life Assur. Society*, 218 N. Y. 18; *Matter of Bowne* v. *Bowne Co.*, 221 N. Y. 28; *People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484; *People* v. *Weinstock*, 193 N. Y. 481.)

*R. Robert Caplan* for respondent. The respondent is entitled to the benefits of section 1077-cc of the Civil Practice Act, both as originally enacted on August 24, 1934, and as amended on May 28, 1937. (*Krebs* v. *Carpenter*, 124 App. Div. 755; *Prudential Ins. Co.* v. *K. L. F. Realty Co.*, 247 App. Div. 898; *Mortgage Commission* v. *Fay*, 255 App. Div. 622; 281 N. Y. 637; *Manufacturers Trust Co.* v. *Reid*, 258 App. Div. 915; *Manufacturers Trust Co.* v. *Korsil*, 258 App. Div. 914; *M. & M. R. Realty Corp.* v. *Mortgage Commission*, 172 Misc. Rep. 818; *Elltan Realty Co.* v. *Irving Trust Co.*, 252 App. Div. 882; *Royal Court Realty Co.* v. *Thomas*, 259 App. Div. 313.)

*Curtiss Ely Frank* and *John F. Caskey* for Mortgage Corporation of New York, *amicus curiæ.*

CONWAY, J. Appeal by plaintiff, by permission of the Appellate Division, first department, from an order of that court, affirming, one justice dissenting, an order of Special Term dismissing the complaint pursuant to section 1077-e of the Civil Practice Act. The following question was certified: " Upon the record herein is the defendant-respondent required to pay interest at the rate of six per cent? "

This is an action to foreclose a mortgage on real property. The alleged default is in payment of an installment of interest alleged to be due at the rate of six per cent per annum. Payment of the interest at the rate of five per cent was tendered before the commencement of the action but refused. Defendant moved to dismiss upon payment of the interest at five per cent plus taxable costs and disburse-

ments. That motion was granted and it is from an affirmance of that order that this appeal is taken.

On May 27, 1930, a bond, secured by a mortgage on the premises in question, in the sum of $28,000, matured. An extension agreement was entered into between the mortgagee and the then owner of the premises extending the mortgage to June 1, 1935, *interest to continue at the rate of six per cent per annum.* In addition it was provided that yearly payments were to be made on account of principal. Two such payments were made reducing the amount of the mortgage to $27,250. Thereafter, and in May, 1933, the premises were conveyed to defendant 2846 Briggs Avenue, Inc. At the time of that conveyance there were arrears in the payment of taxes and interest. Negotiations were then entered into between the mortgagee and defendant 2846 Briggs Avenue, Inc., looking to a revision of the mortgage. As a result of those negotiations plaintiff mortgagee wrote to defendant's attorneys under date of May 11, 1934, as follows:

" This is to advise that we have given your request our most careful consideration and our committee has approved the following:

" To reduce tne interest rate to 5% to date of maturity, June 1, 1935, providing all arrears are paid to date. At that time we will take up the question of a renewal, the reason for this being that some of the trusts interested have terminated and we will have to consider the question at that time of renewing the mortgage, or allowing it to run open for a definite period of time.

" Will you kindly make arrangements with your client to clear off all the present outstanding arrears including taxes and interest and in the future all interest payments will be made quarterly. It is necessary that we have all the arrears paid by May 20, 1934."

Under date of May 17, 1934, defendant's attorney wrote plaintiff accepting those terms on behalf of his client. The arrangement was carried out by defendant and all arrears were cleared up in accordance with the terms of plaintiff's letter of May eleventh.

From the date of that arrangement defendant paid, and plaintiff accepted without any protest, interest at the rate of five per cent per annum in quarterly installments, until the installment of interest due September 1, 1939, was tendered by defendant at the rate of five per cent and the tender refused by plaintiff on the ground that plaintiff was entitled to interest at the rate of six per cent.

The sole question, therefore, is whether plaintiff is entitled to interest at five per cent or six per cent. It is plaintiff's contention that upon the maturity of this mortgage, as extended, interest became payable at the rate of six per cent and that its failure to insist upon payment at six per cent from the maturity of the mortgage until September 1, 1939, was no waiver of any rights as to future payments. It is defendant's contention that the proper rate of interest for the duration of the mortgage moratorium law is five per cent because of the provisions of section 1077-cc of the Civil Practice Act.

Section 1077-cc of the Civil Practice Act, as it was originally enacted in 1934 (L. 1934, ch. 890), read as follows: "Notwithstanding any inconsistent provisions of this act or of any other general or special law, the rate of interest upon any loan, indebtedness, bond, extension agreement, collateral bond, or other evidence of indebtedness or liability, if the indebtedness originated or was originally contracted for simultaneously with a mortgage upon real property and is secured solely by such mortgage, shall not be increased by reason of the maturity of such obligation during the emergency period as defined in section 1077-g of this act, but shall continue after such maturity at the rate specified in such obligation *or any agreement reducing such rate* until the expiration of such emergency period."

By chapter 713 of the Laws of 1937 the italicized words were deleted from the statute.

The motion to dismiss the complaint was granted by the Special Term on the authority of *Mortgage Commission* v. *Fay* (255 App. Div. 622; affd., 281 N. Y. 637).

Before considering the effect of section 1077-cc, it may be helpful to determine what would be the situation in the absence of that section. Disregarding it for the moment, no interest is payable after the maturity of a debt, whether it be based upon bond and mortgage or other obligation, based upon the contract. As was said in *O'Brien* v. *Young* (95 N. Y. 428, 429): " By the decided weight of authority in this State, where one contracts to pay a principal sum at a certain future time with interest, the interest prior to the maturity of the contract is payable by virtue of the contract, and thereafter as damages for the breach of the contract. * * * The same authorities show that after the maturity of such a contract, the interest is to be computed as damages according to the rate prescribed by the law, and not according to that prescribed in the contract if that be more or less." So that in the absence of section 1077-cc the present rate of interest on the bond and mortgage would be six per cent, as damages.

Since the enactment of section 1077-cc the rate payable after maturity is still that prescribed by law and, in a case where section 1077-cc applies, the rate so prescribed is that provided in the obligation referred to therein. " Obligation " under section 1077-cc includes " extension agreement " but does not now include " any agreement reducing such rate."

The agreement to reduce interest was made May 17, 1934. The mortgage as extended expired June 1, 1935. Section 1077-cc was enacted in 1934, becoming effective August twenty-fourth. The amendment omitting the words " or any agreement reducing such rate " was made in 1937.

The case at bar is readily distinguishable from the *Fay* case. In that case there was an extension agreement. In the instant case the agreement relied upon was an agreement to take a reduced amount of interest until the maturity of the pre-existing extension agreement, which had not been entered into by the parties to this action. It was a waiver of interest for a specified time. By the amendment of 1937 the exact situation disclosed here was withdrawn from the

protection of the statute. The words "or any agreement reducing such [interest] rate" were deleted.

Defendant, however, urges that even if that be so, the statute as amended is not applicable here since the omitted words were still in the statute in 1935, the date of the expiration of the extension agreement, and at that time its right to pay only five per cent was fixed until the end of the emergency period.

Such is not the law. In *O'Brien* v. *Young* (*supra*) the court said:

"The same principles apply to all implied contracts. When one makes a valid agreement to pay interest at any stipulated rate for any time he is bound to pay it, and no legislative enactment can release him from his obligation. But in all cases where the obligation to pay interest is one merely implied by the law, or is imposed by law, and there is no contract to pay except the fictitious one which the law implies, then the rate of interest must at all times be the statutory rate. The rate existing at the time the obligation accrued did not become part of any contract, and hence the law which created the obligation could change or alter it for the future without taking away a vested right or impairing a contract.

"In the case of all matured contracts which contain no provision for interest after they are past due, as I have before said, interest is allowed, not by virtue of the contract, but as damages for the breach thereof. In such cases what would be the effect of a statute declaring that no interest should be recovered? As to the interest which had accrued as damages before the date of the law, the law could have no effect because that had become a vested right of property which could not be taken away. But the law could have effect as to the subsequent interest, and in stopping that from running would impair no contract" (p. 432).

The rate of interest payable by law is that fixed by section 1077-cc and is subject to change, as by amendment of the statute. That rate is determined by the obligation therein

referred to, to wit, the rate fixed by the extension agreement. The extension agreement provided for six per cent interest.

The order of the Appellate Division and that of the Special Term should be reversed, with costs to the appellant, the motion to dismiss the complaint denied, and the question certified answered in the affirmative.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and LEWIS, JJ., concur.

Orders reversed, etc.