TIERNAN REALTY COMPANY, INCORPORATED, Plaintiff, *v.* TITLE GUARANTEE AND TRUST COMPANY, etc., Defendant.

Supreme Court, Special Term, Kings County, May 17, 1941.

*Peter Tiernan*, for the plaintiff.

*Dreyer & Traub*, for the defendant.

SMITH, J. This is an action for a declaratory judgment. Briefly, the following are the facts giving rise to the action:

In 1924 plaintiff's predecessor in title executed to the Title Guarantee and Trust Company a bond and mortgage in the sum of $80,000. They provided for the semi-annual payment of interest at six per cent, for semi-annual amortization payments of $1,000 and for the payment of the balance of the principal on December 1, 1929. Thereafter, on September 27, 1937, plaintiff and the then holders of the bond and mortgage entered into an extension agreement pursuant to which the time for the payment of the principal then remaining, $75,620, was extended to September 26, 1940, on the following conditions: (1) That plaintiff pay $380 quarter-annually in reduction of the principal; and (2) that plaintiff meanwhile pay interest, quarter-annually, at the rate of five and one-quarter per cent and comply with all the other terms and conditions of said bond and mortgage, as modified.

The extension agreement also provided that (a) So long as plaintiff continues to comply with all the terms and conditions of the bond and mortgage as thus extended and modified, the holder thereof will accept the interest quarter-annually at the rate of five and one-quarter per cent from September 27, 1937 (the date of the agreement), to September 26, 1940 (the extended maturity date of the mortgage); and (b) that if at the end of the mortgage term as extended plaintiff " shall have duly made all payments on account of reduction of principal required to be made by this [extension] agreement, then the mortgagee will waive all further payments of interest which became due during the period that this mortgage shall have been extended by this agreement, but in the event that there shall be any default in any of the terms and

conditions on the part of the owner [plaintiff] of said mortgaged premises, and such default shall have continued for a period of ten days, then all interest remaining unpaid shall be immediately due and on or after the date of such default interest on this mortgage shall be payable at the rate of six (6%) per centum per annum."

The extension agreement further specifically provided: " that when the terms and provisions contained in said bond and mortgage in any way conflict with the terms and provisions contained in this agreement, the terms and provisions herein contained shall prevail, and that as modified by this agreement the said bond and mortgage is hereby ratified and confirmed "

Thereafter plaintiff quarter-annually duly made the amortization payments in reduction of the principal and the interest payments at the ate of five and one-quarter per cent, and complied with all the other terms and conditions of the bond and mortgage, as modified by the extension agreement.  At the maturity of the bond and mortgage, as extended, namely, on September 26, 1940, plaintiff failed to pay the balance of the principal.

By this action plaintiff seeks a judicial declaration determining the legal relations between it and defendant, as mortgagee, arising out of the original bond and mortgage and the extension agreement. Specifically, the legal issues sought to be determined are: (1) Whether, in view of the provisions of section 1077-cc of the Civil Practice Act, interest on the remaining principal of the matured debt is to be computed at five and one-quarter per centum as specified in the extension agreement or at six per centum as specified in the mortgage; and (2) whether such interest is to be payable quarter-annually as specified in the extension agreement or semi-annually as specified in the mortgage.  Stated in other words, the question is whether under section 1077-cc of the Civil Practice Act, after the maturity of a mortgage debt, where by agreement the time of payment of the principal had been extended and the interest rate reduced, and where the owner until the maturity has complied with all the terms of the mortgage as extended, the terms of the original mortgage or of the extension agreement determine both the rate of interest and the time of payment thereof.

Plaintiff now moves for summary judgment under rule 113 of the Rules of Civil Practice.  That rule, however, is not applicable to actions for a declaratory judgment.  As all the material facts are admitted and only a question of law is presented, plaintiff, properly, should have moved for judgment on the pleadings under

rule 112 of the Rules of Civil Practice and section 476 of the Civil Practice Act. Defendant does not raise this objection and it apparently joins in plaintiff's request for a disposition on the merits. Accordingly, under that part of plaintiff's motion which prays for other and further relief, the court will treat this motion as one for judgment on the pleadings under the rule and section just mentioned.

The statute (Civ. Prac. Act, § 1077-cc) provides: "Notwithstanding any inconsistent provisions of this act or of any other general or special law, the rate of interest upon any loan, indebtedness, bond, extension agreement, collateral bond, or other evidence of indebtedness or liability, if the indebtedness originated or was originally contracted for simultaneously with a mortgage upon real property and is secured solely by such mortgage, shall not be increased by reason of the maturity of such obligation during the emergency period as defined in section ten hundred seventy-seven-g of this act, but shall continue after such maturity at the rate specified in such obligation until the expiration of such emergency period."

The statute then provides (§ 1077-d) that any agreement whereby a mortgagor waives the protection intended to be afforded to him by the preceding section (§ 1077-cc, as well as by §§ 1077-a and 1077-b) "shall be deemed to be void as against the public policy and be wholly unenforceable."

The purpose of the Legislature, in enacting this statute (§§ 1077-cc, 1077-d) prohibiting any increase in interest by reason of the maturity of a mortgage debt, plainly appears to be to prevent any additional burden from being cast upon the owner who is unable to pay such debt at maturity. This is consistent with the purpose of the moratoria statutes generally which during the period of the emergency, bar suit to foreclose the mortgage or action upon the debt for any default in the payment of principal. (Civ. Prac. Act, §§ 1077-a, 1077-b.) Reading together all these provisions of the moratoria statutes (§§ 1077-a, 1077-b, 1077-cc, 1077-d), they evince an unmistakable intent, during the emergency, to protect the owner from all the legal consequences incident to a default in the payment of principal; an intent to suspend the enforcement of the mortgagee's legal rights and at the same time to preserve unchanged the principal of the mortgage debt and the interest payable thereon as they existed at the maturity of the debt.

A fair reading of the extension agreement here presented clearly shows the intent of the parties was that the maturity of the mort-

gage debt shall be extended to September 26, 1940, and that " meanwhile," or until such maturity, the owner was to have the benefit of a reduction in the interest to five and one-quarter per centum, payable quarterly-annually. Such extension and reduction were granted only upon the conditions that " meanwhile," that is, until the extended maturity, the owner make such interest payments, make the amortization payments specified in the extension agreement, and comply with all the other terms and conditions of the mortgage, as modified. The conditions related exclusively to the performance of the terms of the mortgage during the interim between the date of the extension agreement and the extended maturity of the mortgage. The extension agreement further provided that upon the performance of such conditions by the owner the mortgagee waives the additional right (which it had reserved) of demanding the difference in interest between the rate specified in the extension agreement and the rate specified in the original mortgage.

It is not disputed that " meanwhile," that is, until the maturity of the mortgage as extended, the owner did make the interest and amortization payments and did comply with all the other terms and conditions of the mortgage, as modified by the extension agreement. The owner thereby fulfilled the conditions upon which the extension and the change in interest were granted. Accordingly, it follows that this interest change which was first granted conditionally by the extension agreement became absolute upon the performance of the conditions. For the period of the extension this interest change was thus legally and irrevocably substituted for the interest provision in the original mortgage. The terms of the extension agreement became incorporated in the mortgage and the terms of the latter were deemed to be modified in so far as they differed from the terms of the extension agreement. In other words, the extension agreement became integrated in the bond and mortgage so that, in effect, they all constituted one transaction and one instrument. (*Mortgage Commission of State of New York* v. *Fay*, 255 App. Div. 622; affd., 281 N. Y. 637.) Apart from the fact that this conclusion follows as matter of law the extension agreement itself expressly provides that it shall have such an effect.

Therefore, until September 26, 1940, the date of maturity of the mortgage, as extended, the interest was five and one-quarter per centum payable quarter-annually. After maturity neither the extension agreement nor the original mortgage made any provision for the payment of interest. Consequently, upon plaintiff's failure

to pay the remaining principal at maturity the interest to which the mortgagee automatically became entitled was six per centum per annum, payable whenever the mortgagee elected to enforce payment. But the mortgagee became entitled to this increased rate of interest only as matter of law and only as damages by reason of the maturity of the obligation and plaintiff's failure to meet it. (*Title Guarantee & Trust Co.* v. *2846 Briggs Avenue*, 283 N. Y. 512.) It is precisely such an increase in the rate of interest — an increase which results solely " by reason of the maturity " of the obligation — that the statute forbids. (Civ. Prac. Act. §§ 1077-cc, 1077-d; *Title Guarantee & Trust Co.* v. *2846 Briggs Avenue, supra; Mortgage Commission of State of New York* v. *Fay, supra; Manufacturers Trust Co.* v. *Korsil Realty, Inc.*, 258 App. Div. 914; *Franklin Title & Mortgage Guaranty Co. of New York* v. *Shernov*, 250 id. 267.)

While plaintiff by virtue of the statute is entitled to continue paying interest during the emergency period at the rate of five and one-quarter per centum, it is not entitled to pay such interest semi-annually. The statute not only prohibits any increase in interest by reason of the maturity of the mortgage debt but it also confines the mortgagee to the right to collect interest at the rate and at the times specified in the obligation at the date of maturity. The language of the statute (Civ. Prac. Act, § 1077-cc) is that the interest shall continue " at the rate specified " in the matured obligation. Changing the time of the interest payment is in effect changing the interest rate. One cannot be changed without affecting the other; they are inextricably bound together. The intent of the statute was to continue after maturity all the provisions for interest which were effective until maturity. As to the interest, the *status quo* at maturity was to be maintained until the obligation was discharged or the period of the emergency expired. Any other interpretation would result in an abuse of the statute by allowing one party or the other to gain an advantage which the statute never contemplated.

It follows, therefore, that the terms of the extension agreement in effect at maturity of the mortgage must determine both the rate of interest and the intervals when such interest is to be paid. Hence, plaintiff should be required to pay the interest quarter-annually at the rate of five and one-quarter per centum.

The court has not overlooked a contrary holding by the Appellate Division of the First Department. (*Royal Court Realty Co., Inc.,* v. *Thomas*, 259 App. Div. 313.) There practically the same facts were presented; the provisions of the extension agreement were

identical. That court held, nevertheless, that the statute (Civ. Prac. Act, § 1077-cc) was inapplicable because the interest rate specified in the obligation was not increased by reason of its maturity but by reason of the owner's failure to pay the principal at maturity — a condition upon which the lower interest rate was granted by the extension agreement.

This court feels constrained to disagree with that decision: *First*, because it is contrary to all the cases cited above. *Second*, because its reasoning, if logically extended, would be equally applicable upon the maturity of every mortgage bearing an interest rate of less than six per cent, regardless of whether by subsequent agreement the maturity date had been extended and the interest rate reduced below six per cent; and. thus, under no circumstances would the statute be applicable. For in every mortgage bearing an interest rate of less than six per cent there is the condition, expressed or implied, that the mortgagor will pay the principal at maturity. And in every such mortgage there is the further condition, expressed by the contract or implied by the law, that upon the failure so to do the interest rate will be increased to six per cent, if the mortgagee so elects. In every case, however, this increase occurs only " by reason of the maturity of the obligation." That fact is the basis for the increase; and it is that fact which gives rise to the mortgagee's right to demand the increased interest rate. Whether the contract grants it or the law allows it is immaterial. We cannot lose sight of the fact that it is primarily such an increase which the statute (Civ. Prac. Act, § 1077-cc) is designed to prevent, irrespective of the medium or cause for the increase. Obviously, if the owner complied with the condition of the mortgage requiring him to pay the remaining principal upon maturity there never would be any need for the statute. It is only when the owner fails to pay the principal at maturity that the statute may be invoked. The statute should be construed so as to achieve its purpose, namely, that upon the failure of the owner to pay the principal at maturity to preserve for his benefit the interest rate payable at maturity under the mortgage. Any other construction would result in giving priority to form over substance and in thwarting the beneficent purpose of the statute.

Assuming, however, that the extension agreement is susceptible of an interpretation that the interest rate shall be increased because of the owner's failure to meet the condition requiring payment of the principal at maturity, or even assuming that the agreement expressly so provided, this would in effect constitute a waiver by the owner of the protection intended to be afforded him by the

statute (Civ. Prac. Act, § 1077-cc) and would be invalid. (Civ. Prac. Act, § 1077-d.) The command of the statute is that such a waiver " shall be deemed to be void as against the public policy and be wholly unenforceable." (Civ. Prac. Act, § 1077-d.) But, as pointed out above, the extension agreement here, if fairly read, is not capable of such a construction. Moreover, in case of doubt, the construction which renders an agreement valid is always preferred to the construction which renders it invalid.

The motion for judgment on the pleadings will be granted in accordance with this opinion. Settle order and judgment on notice. The court in the exercise of its discretionary right (Rules Civ. Prac. rule 214) will not award costs to either party.