METROPOLITAN SAVINGS BANK, Respondent, v. FRIEND L. TUTTLE, as Surviving Executor and Trustee under the Will of ANGELO UBRIACO, Deceased, et al., Appellants., et al., Defendants.

Argued April 6, 1943; decided June 10, 1943.

*Friend L. Tuttle* for appellants.

*Irving Smith, Jr., A. S. Hutchins* and *W. Hutchins* for respondent.

CONWAY, J. This is an appeal, by permission of the Appellate Division, First Department, from an order of that court affirming an order denying a motion to dismiss the complaint under rule 106, subdivision 5, of the Rules of Civil Practice on the ground that it appeared on the face thereof that it did not state facts sufficient to constitute a cause of action. The Appellate Division has certified the following question: " Does the complaint herein state facts sufficient to constitute a cause of action? "

The complaint alleges that one Sohmer gave his bond dated December 10, 1923, to plaintiff in the sum of $15,000 by which he obligated himself to pay that sum on December 10, 1928, with interest to be computed from December 10, 1923, at the rate of five and one half per centum per annum to be paid on the first day of March next ensuing and semi-annually, thereafter in each year. That as collateral security he executed and delivered to plaintiff a mortgage *dated* December 10, 1923, on certain described premises in the Bronx. That the mortgagor covenanted that the principal sum should become due and payable after default in the payment of interest for twenty days. " That the defendants have failed to comply with the conditions contained in said bond and mortgage by omitting to pay the interest on the principal sum of Fifteen Thousand ($15,000.00) Dollars which became due and payable on the first day of March, 1940, at the rate of six per centum per annum, amounting to the sum of $450.00, no part of which has been paid to the said plaintiff although duly demanded, and that more than twenty days have elapsed since said interest became due and payable, and that by reason of such default the plaintiff herein has elected and does elect, in accordance with the conditions contained in said bond and mortgage, to declare the principal sum immediately due and payable." There were other allegations proper in actions to foreclose a mortgage but not here material.

In substance, therefore, the complaint alleges that the bond and mortgage matured on December 10, 1928; that the rate of interest provided in the bond and mortgage was five and

one half per cent; that there was a default by reason of the failure to pay interest at the rate of six per cent on March 1, 1940; that by reason of said default, plaintiff is entitled to foreclose the mortgage. Concededly there was no extension agreement ever made and there is no allegation that there was any demand for the payment of principal prior to the emergency period or of interest at a rate greater than five and one half per cent prior to March 1, 1940.

It is the settled law in this State that, *in the absence of other agreement by the parties,* '' where one contracts to pay a principal sum at a certain future time with interest, the interest prior to the maturity of the contract is payable by virtue of the contract, and thereafter as damages for the breach of the contract.'' (*O'Brien* v. *Young,* 95 N. Y. 428, 429.) After maturity, in the absence of other agreement, the interest is computed as damages according to the rate then *prescribed by law,* whether that is more or less than the contract rate. (*O'Brien* v. *Young, supra;* p. 430; *Ferris* v. *Hard,* 135 N. Y. 354; *Title Guarantee & Trust Co.* v. *2846 Briggs Avenue, Inc.,* 283 N. Y. 512.) The rate may continue to be the rate provided in the contract or obligation when so prescribed *by statute* but the interest is nevertheless that which is *authorized by law.* (*Title Guarantee & Trust Co.* v. *2846 Briggs Avenue, Inc., supra.*)

That brings us to the question as to what is the rate of interest prescribed by statute as to the bond and mortgage here involved. Is it the rate provided in General Business Law, section 370, or that provided in Civil Practice Act, section 1077-cc?

Section 1077-cc reads as follows: '' INTEREST ON EVIDENCE OF INDEBTEDNESS ORIGINALLY CONTRACTED FOR SIMULTANEOUSLY WITH MORTGAGE. Notwithstanding any inconsistent provisions of this act or of any other general or special law, the rate of interest upon any loan, indebtedness, bond, extension agreement, collateral bond, or other evidence of indebtedness or liability, if the indebtedness originated or was originally contracted for simultaneously with a mortgage upon real property and is secured solely by such mortgage, shall not be increased by reason of the maturity of such obligation during the emergency period as defined in section ten hundred seventy-seven-g of this act, but shall continue after such maturity at the rate

specified in such obligation until the expiration of such emergency period.''

Plaintiff contends that section 1077-cc is inapplicable here because the maturity of the mortgage in suit occurred on December 10, 1928, which was not during the emergency period, and that, therefore, General Business Law, section 370, is the applicable statute. Unquestionably the statutory rate of interest allowed as damages may be changed during the period between the maturity of an obligation and its payment. (*O'Brien* v. *Young, supra; Title Guarantee & Trust Co.* v. *2846 Briggs Avenue, Inc., supra; People ex rel. Emigrant Industrial Sav. Bank* v. *Sexton,* 284 N. Y. 57.)

Stripped of phrases and clauses unnecessary for our present consideration, section 1077-cc reads: '' * * * the rate of interest upon any loan, * * * originally contracted for simultaneously with a mortgage upon real property and * * * secured solely by such mortgage, shall not be increased by reason of the maturity of such obligation during the emergency period * * *, but shall continue after such maturity at the rate specified in such obligation until the expiration of such emergency period.''

Plaintiff justifies its construction of the section by making the phrase '' during the emergency period '' modify '' maturity.'' If we move the four-word phrase so as to make it follow the word '' increased '' so that this portion of the section reads: *secured solely by such mortgage, shall not be increased during the emergency period by reason of the maturity of such obligation but shall continue after such maturity at the rate specified in such obligation until the expiration of the emergency period,* we would have more clearly presented the legislative intent and the phrase would be placed immediately after the verb '' shall (not) be increased '' which it properly modifies.

Section 1077-cc was enacted (L. 1934, ch. 890) at an extraordinary legislative session in 1934 and became effective August 24, 1934. It seems to give evidence of having been put together hurriedly. It had no section heading. It made no reference to any of the then existing emergency laws of 1933 except a reference to that part of section 1077-g which defined the emergency period. It overrode by its terms ''any inconsistent pro-

visions of this act or of any other general or special law,'' including General Business Law, section 370. It was applicable to *all* mortgages *of whatever date* whereas the other emergency statutes of the 1077 series were by section 1077-g applicable only to mortgages *dated* prior to July 1, 1932. (Footnote No. 1.)

We may well ask ourselves why was this seeming haste in the enactment of a statute broader than the emergency statutes of August 26, 1933, in view of the fact that it had but approximately ten months to be operative, *viz.* from August 24, 1934, to July 1, 1935, the date then set for the termination of the emergency period? In addition to that *all* mortgages affected by the emergency statutes whether they had matured or would mature prior to July 1, 1935, had been extended by law *beyond the emergency period.* (Footnote No. 2.)

Thus when section 1077-cc was enacted on August 24, 1934, *as regards principal,* assuming plaintiff's construction to be the correct one, there were *no matured or open mortgages* on which the *section could operate,* nor would there be until at least six months after July 1, 1935.

Where then was the necessity for the passage of section 1077-cc at an extraordinary session if, as plaintiff urges, the only mortgages to be affected were those maturing during the emergency period when there were to be no mortgages maturing during the emergency period as then established? Is it not more likely that having suspended the bringing of foreclosure actions for failure to pay *principal* when due, it was necessary to enact the section so as to protect mortgagors and owners against increases in *interest rates?*

No. 1. It was not until L. 1937, ch. 713, that section 1077-cc was expressly restricted in application to mortgages *dated* prior to July 1, 1932, and it was not until April 6, 1938, that it was finally integrated with the other 1077 sections by the passage of L. 1938, ch. 500. Finally by L. 1939, ch. 359, it was given its section heading.

No. 2. By L. 1934, ch. 357, sections 1077-a and 1077-b were amended, as to all mortgages including the one in suit here, *dated* prior to July 1, 1932, so that the *principal* sums of such mortgages which by their terms were then overdue or would become due prior to July 1, 1934, were extended for six months beyond the termination of the emergency period and those becoming due between July 1, 1934, and July 1, 1935, were extended for one year beyond the termination of the emergency period. which was then set at July 1, 1935.

From the date of its enactment Civil Practice Act, section 1077-g, limited the operation of the other six emergency statutes effective August 26, 1933, to mortgages *dated* prior to July 1, 1932. The mortgagors and owners affected by those mortgages were the ones the Legislature believed needed protection and assistance in the emergency. Of those mortgages some would have matured before and some would have matured subsequent to July 1, 1932, but the *time of maturity* was not the determinant in the legislative mind. That was why the *date* of the mortgage was made the determining factor.

So anxious was the Legislature to prevent an increase in interest rates by mortgagees that, by chapter 318 of the Laws of 1935, effective April 8, section 1077-d was amended so as to make void and unenforcible any waiver of the protection of section 1077-cc as contrary to the public policy of the State. From whatever angle we view the legislative acts, we behold the legislative intent to preserve the *status quo* during the period of the emergency both as to principal and interest. With this evidence before us it seems unthinkable that the Legislature intended to exclude from the protection of section 1077-cc the great number of mortgages which must have been matured and open at the commencement of the emergency period in 1933.

We have indicated how well and carefully the Legislature integrated the 1077 series of emergency statutes into a comprehensive plan " to relieve the strain on the real property market and to afford temporary relief to those indebted on bonds and real property mortgages." (*City Bank Farmers Trust Co.* v. *Ardlea Incorporation,* 267 N. Y. 224, 227.) In that case, p. 228, it was further said: " Sections 1083-a and 1083-b were enacted at the same time as sections 1077-a and 1077-b and as part of the general purpose of affording relief to distressed debtors.

" The sections must be read together, having in mind the purpose of the emergency legislation and the object which it was enacted to accomplish." To the same effect are *Smith* v. *People* (47 N. Y. 330, 337); *People ex rel. Doscher* v. *Sisson* (222 N. Y. 387, 393); *Klinke* v. *Samuels* (264 N. Y. 144.)

Section 1077-cc, as well as the other emergency statutes, were enacted for the protection of owners and obligors on

bonds and mortgages. The legislative purpose was to prevent foreclosures and the exaction of higher rates of interest during the emergency period. The Legislature undoubtedly intended that the legal rate of interest chargeable as damages for failure to pay the debt when due *was to be determined by the rate specified, in this instance, in the bond.* The rate *so specified* became the legal rate as damages during the emergency period. In other words, section 1077-cc established the interest rate allowed by statute as damages in the instances to which it was applicable.

This construction of the statute, it seems to us, is the natural, rational and necessary one in view of the spirit and object of section 1077-cc and the then prevalent hardships sought to be alleviated by the so-called mortgage moratorium statutes.

The orders should be reversed, the motion to dismiss the complaint granted with costs in all courts, and the question certified answered in the negative.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS and DESMOND, JJ., concur; FINCH, J., taking no part.

Orders reversed, etc.