Peck, J.
In this submission of a controversy the following facts have been stipulated: Plaintiff is the owner of premises 1158 Colgate Avenue in Bronx County which she acquired on or about April 3,1937, at a time when the property was incumbered by a $33,000 mortgage held by the trustees of the Graves estate. The mortgage provided for the payment of interest at the rate of 5%' per annum. Prior to the conveyance of the property to plaintiff the former owner sought an extension of the mortgage and a reduction of the interest rate. The negotiations resulted in a. letter dated February 27,1937, sent by the attorneys for the mortgagees to the attorney for the then owners. The letter sent pursuant to written authority received from each of the trustees was as follows: “ Replying to your letter of February 3rd, copies of which were sent to the trustees of the Graves Estate that hold a mortgage of $32,500, covering premises 1158 .Colgate Avenue, we have just received the decision of the last trustee in answer to your request for extension of this mortgage. The trustees have decided that they prefer to have the mortgage continue as an open one at the rate of four per cent per annum.”
From the time plaintiff became the owner of the property to January 2, 1946, she paid interest upon the unpaid principal balance of the mortgage at the rate of 4%. The payments so made were accepted by the holders of the mortgage without objection or protest. On January 2,1946, the mortgage was assigned to the- defendant. Shortly before the assignment defendant received an “ Estoppel Certificate ” executed by the plaintiff in which it was stated that the unpaid principal balance of the mortgage bore interest at the rate of 4%. Immediately after it acquiréd the mortgage, defendant made demand upon plaintiff for the payment of interest at the 5% rate provided for in the mortgage.
On May 16, 1946, plaintiff tendered a payment of interest at the rate of 4%. Defendant refused the amount offered and informed plaintiff that an action to foreclose the mortgage would be instituted unless interest was paid at the 5% rate, Whereupon plaintiff made payment at the higher rate under protest.
*207 Upon the foregoing statement of facts we are asked to determine whether defendant is entitled to interest at the rate of 4% or 5%.
The question, as posed by the parties, is whether the reduction in the interest rate to 4% was at the will of the mortgagee or was for the duration of the emergency under the Mortgage Moratorium Law. Plaintiff contends that the reduction was made in contemplation of the act and must be construed as being for the period of the emergency declared by the act. Defendant observes that apart from the act such a reduction would concededly be at will, that in the absence of any contrary expression in the agreement of the parties it remained at will, and that the Moratorium Law does not affect the matter.
Plaintiff relies on section 1077-cc of the Civil Practice Act, but we find nothing there that helps plaintiff. That section simply provides that the rate of interest shall not be increased by reason of the maturity of the obligation during the emergency period, but shall continue after maturity at the rate specified in the obligation. The obligation here matured prior to the letter granting a rate reduction. Maturity in no way affected the rate, which at the time was 5%. Except for the letter reducing;the rate to 4%, the rate would have continued at 5% by virtue of section 1077-cc. The collection of interest at 5% is, therefore, perfectly consistent with section 1077-cc.
The question is whether the letter, which was a waiver of the right to collect interest at 5% for any period during which 4% was actually collected (Title Guarantee & Trust Company v. 2846 Briggs Avenue, Inc., 283 N. Y. 512), was also a waiver as to the future or a contract or commitment to accept 4% for' the indefinite. duration of the emergency. Or, to put it another way, does the law imply what the parties certainly failed to express, viz., that the agreement had a term and that the term was the duration of a statutory emergency as it might be extended from year to year by successive sessions of the Legislature.
We see no warrant for such construction or implication. While an agreement to reduce interest on a bond and mortgage need not be supported by consideration (Real Property Law, § 279), the fact that there was no consideration or term here is significant. The letter can hardly be called an agreement, it was merely a voluntary unilateral statement. It is not to be given legal implications beyond its clear intendment. Its scope can be exactly determined from its wording against the admitted factual and *208 legal background. An extension had been requested and refused, meaning that a commitment as to the future was eschewed. The mortgage was an open one by law, and, in the absence of the extension which was refused, continued as an open one. When the mortgagee said that it preferred to have the mortgage continue as-an open one it was merely taking the only course allowed by law as an alternative to an extension. The grant of a lower interest rate was an indulgence, which by any ordinary test or rule of law was at will. (See Wadlef Realty, Inc., v. Manhattan Life Insurance Company, 294 N. Y. 884.) We think it not permissible to give the favor a term by construction or to say that the parties contemplated, as a matter of law, that it would have the indefinite and continuing term of the emergency declared by the Legislature. The Moratorium Law has for its purpose the preservation of a mortgagor’s interest in his property and the preservation of interest rates against increase above the amount specified in the obligation. There is no violation of the purpose or spirit of the Moratorium Law in requiring a mortgagor to pay or permitting a mortgagee to collect the amount of interest specified in the obligation.
Judgment should be for the defendant.