### WARDER v. BRADY.
### No. 4625.

Circuit Court of Appeals, Fourth Circuit.

Oct. 15, 1940.

Jed W. Robinson, of Grafton, W. Va., for appellant.

Elmer A. Bowers, of Elkins, W. Va., for appellee.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

Francis L. Warder, a special receiver appointed by the Circuit Court of Taylor County, West Virginia, for the benefit of the bondholders of the Maryland Coal Company of West Virginia. appeals from a turn-over order of the District Court whereby he was summarily directed to pay the sum of $2,475.52 held by him for the bondholders, to A. Spates Brady, a trustee for the Coal Company appointed by the District Court in a reorganization proceeding under Ch. X of the Bankruptcy Act of June 22, 1938, 52 Stat. 883 et seq., 11 U.S.C.A. § 501 et seq. The grounds of the appeal are that the District Court was without jurisdiction to decide the controversy and pass the order in a summary proceeding, and that in any event, the order was not justified on its merits by the circumstances of the case.

The fund came into existence during the course of a receivership proceeding in the State court, which was instituted by the creditors of the corporation on November 12, 1932. The receiver therein oper-

ated the mines of the corporation under the authority of the court. On January 27, 1936 an intervening petition was filed on behalf of the holders of certain income bonds dated July 6, 1911 and due February 1, 1941, which had been issued by the company in the aggregate sum of $257,500 and contained the following provision: "The Directors shall set aside from the proceeds of the sales of coal mined from the property of the company, a fund equal to five cents per gross ton on all coal mined, and such further sum as may fairly represent the depreciation of the mining plant connected therewith. With this fund, and such other funds as the Directors may appropriate the Directors may from time to time, purchase, or redeem at par, this Bond or any or all of the Bonds issued hereunder." The petitioners alleged that for a great many years prior to the receivership the company had failed and neglected to comply with the quoted provision, and no such fund had been established or maintained, and that the operating receiver had likewise failed in this respect; that with the exception of the bonded indebtedness, all other debts of the company and all costs of the proceeding had been paid or would be paid in the year 1936, and that the property in the hands of the receiver would be turned back to the company, and that it was reasonable to believe from the past conduct of those in control of the company that the property would be wasted, dissipated and mismanaged, so that there would be no funds for the payment of the bonds when they fell due; and that there were not sufficient properties belonging to the company to pay the bonds in full. It was further alleged that the receiver had operated the mines at a profit, and it was prayed that the court direct the receiver to retain possession of the property and to continue the operation of the mines for the benefit of the bondholders. The questions raised by the intervening petition were considered by the state court, and further proceedings were had which resulted in a decree of December 31, 1937 wherein a description of the property found by the court to be owned by the company was set out, the amount of the outstanding bonds was found to be $257,500, and the owners thereof were ascertained; and it was decreed that the property of the company should be charged in equity with a lien in favor of the bondholders. The receiver was or-

dered to turn over the property to the company, which was directed to set aside a fund as provided in the quoted provision of the bonds until the further order of the court "unless such bonds are sooner redeemed and until such funds so set aside shall equal the sum of $257,500". The company was also directed to pay interest on the bonds to the bondholders, and to pay all sums set aside for the benefit of the bondholders in accordance with the provisions of the bonds, to Francis L. Warder, who was appointed a special receiver to receive the moneys which were "to be held by him for the benefit of the bondholders until the further order of this court". The operating receiver was also directed to pay any surplus remaining in his hands after the settlement of his accounts to Warder, to be held by him for the same purpose. It was further directed that Warder might from time to time under the order of the court purchase the bonds or any of them by calling for bids on a discount basis or redeem at par any or all of said bonds.

Under this decree, the special receiver received certain sums of money from the company and also a larger sum from the operating receiver, after the latter had stated his accounts and had been directed by a subsequent order of July 1, 1938, to pay to Warder the surplus in his hands. The special receiver, acting under the orders of the state court, thereafter made certain payments from the fund in the redemption or purchase of some of the bonds at a discount, after the bondholders, upon notice, had submitted bids therefor; and there remained in his hands when the present controversy arose the sum of $2,511.18.

This controversy began on September 20, 1939, when the trustee in the reorganization proceeding prayed the District Court to stay further proceedings in the state court and to order the special receiver therein to turn over the funds in his hands. It was alleged in the trustee's petition that the fund in the hands of the special receiver belonged to the debtor and that it could be advantageously used by the trustee as working capital in operating the business of the debtor. In answer to the petition the special receiver appeared specially and filed an answer in which the aforegoing facts were set out and it was alleged that the legal title to the fund was

vested in him for the use and benefit of the bondholders who held the equitable title thereto, and that the fund was not and never had been the property of the debtor. The matter was heard summarily upon the petition and answer. The court ordered that the fund should be transferred to the trustee and that all further proceedings in the state court should be stayed, and referred the matter to a referee to ascertain the amount of the fund. An accounting was accordingly had, and thereupon, on February 10, 1940, the court passed the turn over order appealed from, directing the special receiver to pay to the trustee the sum of $2,475.52, being the amount of the fund in his hands less certain allowances. From this order the pending appeal was taken.

The special receiver seems to contend that the District Court was without power to pass this order in a summary proceeding because of the provisions of § 23 of the Bankruptcy Act, 11 U.S.C.A. § 46, as interpreted by the decisions of the courts. This section was reenacted with minor changes as part of the Chandler Act of June 22, 1938. It provides in substance that the United States District Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under the act, between receivers and trustees as such and divers claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such controversies had been between the bankrupt and the adverse claimants; and suits by the receiver and the trustee, with certain exceptions, shall be brought or prosecuted only in the courts where the bankrupt may have brought or prosecuted them if bankruptcy proceedings had not been instituted, unless by the consent of the defendant.

■■■ It is well settled by decisions interpreting this section that property or money held adversely to the bankrupt can only be recovered in a plenary suit and not by a summary proceeding in a bankruptcy court. The mere assertion of an adverse claim is not sufficient to oust the jurisdiction of the courts of bankruptcy, for they have power to inquire preliminarily whether the claim is so unsubstantial and obviously insufficient, either in fact or in law, as to be plainly without merit; and if so, to dispose of it summarily. On the other hand, if the claim be found to be substantial and the property is in the possession of the claimant, the court is without jurisdiction to proceed at all even in a plenary proceeding without the consent of the defendant, unless the other conditions prescribed by the statute are met. May v. Henderson, 268 U.S. 111, 115, 116, 45 S.Ct. 456, 69 L.Ed. 870; Taubel, etc., Co. v. Fox, 264 U.S. 426, 432, 433, 44 S.Ct. 396, 68 L.Ed. 770; Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; MacDonald v. Plymouth Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093; In re Rathman, 8 Cir., 183 F. 913; Central Republic Bank & Trust Co. v. Caldwell, 8 Cir., 58 F.2d 721, 730; Marcell v. Engebretson, 8 Cir., 74 F.2d 93, certiorari denied 296 U.S. 579, 56 S.Ct. 89, 80 L.Ed. 409; In re Indiana Flooring Co., 2 Cir., 62 F.2d 763, 764. There can be no doubt that under these authorities the claim of the special receiver in the pending case would be considered substantial and adverse within the meaning of § 23. At the time of the institution of the reorganization proceeding, the fund was not actually or constructively in the possession of the trustee, but in the possession of the special state court receiver who set up the substantial and bona fide contention that the title to the fund resided in him under the decree of the state court and not in the bankrupt.

■■■ Another restriction upon jurisdiction that has been recognized by the courts of bankruptcy (as well as courts of equity) is the rule of comity which forbids one court from exercising control over the property of the debtor which is already the subject of proceedings in another court, and permits the court first acquiring possession of the property to continue its administration without interruption until it is complete. This principle has had complete recognition in this and other federal courts. Griffin v. Lenhart, 4 Cir., 266 F. 671; Straton v. New, 283 U.S. 318, 51 S. Ct. 465, 75 L.Ed. 1060; Finletter, The Law of Bankruptcy Reorganization, 1939 Ed. pp. 115 to 121. If applied to the pending case, it would oust the jurisdiction of the bankruptcy court for the evidence shows clearly that the fund in litigation had been created in accordance with the decree of the state court, and had been placed in the custody of its special receiver long before the institution of the reorganization proceedings in bankruptcy. Furthermore, the fund was created at the conclusion of an equity receivership instituted for the bene-

fit of creditors generally, when all the creditors, except the bondholders, had been paid and the property in the hands of the operating receiver had been turned back to the corporation. The receivership therefore was no longer an insolvent proceeding which, notwithstanding the rule of comity, was subject to supersession by the bankrupt court under the paramount bankruptcy power. Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599.

We are concerned in the pending case, however, with the Act of 1938 which was passed for the very purpose of modifying these restrictions upon the jurisdiction of the bankruptcy court when engaged in a reorganization proceeding under Ch. X of the statute. First, it is important to note that § 23 of the Act of 1938 does not affect the present controversy; for while it is provided by § 102, 11 U.S.C.A. § 502, that Chs. I to VII of the act (including therein § 23), to the extent that they are not inconsistent with Ch. X, shall apply to proceedings under that title. It is also provided that § 23 (and other sections) shall not apply in such a proceeding unless an order shall be entered by the court directing that bankruptcy be proceeded with pursuant to Chs. I to VII. Accordingly, the restrictions contained in § 23 do not limit the jurisdiction of the court in the pending reorganization proceeding.

Moreover, the rule of comity is relaxed with respect to proceedings under Ch. X. The special exceptions to the rule contained in §§ 60, 67 and 70 of Ch. VII of the Act, 11 U.S.C.A. §§ 96, 107, 110, are made applicable to proceedings under Ch. X by § 102; and more important for our purposes, §§ 256 and 257, 11 U.S.C.A. §§ 656 and 657, provide that a reorganization petition may be filed under Ch. X notwithstanding the pendency of a prior mortgage foreclosure, equity or other proceeding in a federal or state court in which a trustee or receiver of all or any part of the property of the debtor has been appointed, and that a trustee appointed under Ch. X, or the debtor, if continued in possession of the property, shall become vested with the rights, if any, of such prior receiver or trustee in such property with the right to immediate possession thereof. § 113, 11 U.S.C.A. § 513, empowers the judge, prior to the approval of a petition in reorganization, upon cause shown, to grant a temporary stay, until the petition is acted upon, of a prior pending bankruptcy, mortgage foreclosure or equity receivership proceeding, and of any act or other proceeding to enforce a lien against a debtor's property; § 116(4); 11 U.S.C.A. § 516(4), empowers the judge, upon the approval of a petition, to enjoin or stay until final decree, the commencement or continuation of a suit against the debtor or its trustee, or any act or proceeding to enforce a lien upon the property of the debtor; and § 2 sub. a (21), 11 U.S.C.A. § 11, sub. a(21), invests the courts of bankruptcy with such jurisdiction at law and equity as will enable them to exercise original jurisdiction in proceedings under Ch. X, amongst other things, to require receivers or trustees appointed in proceedings not under the act, assignees for the benefit of creditors and agents authorized to take possession of or to liquidate a person's property, although appointed more than four months prior to bankruptcy, to deliver the property in their possession or under their control to the receiver or trustee appointed under the act, and in all such cases, to account to the court for the disposition by them of the property of the bankrupt or debtor.* Obviously these provisions go far to restrict the application of the rule of comity in the particular cases described in the quoted sections, and thus to enlarge the jurisdiction of federal courts over adverse claims.

Moreover, there are provisions of even greater scope affecting the jurisdiction of the bankruptcy court that refer to the dependent jurisdiction which is conferred upon a federal court upon the appointment of a receiver of the debtor's property. This kind of jurisdiction is described in Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 312, 73 L.Ed. 669, as follows: "The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit, Rouse v. Letcher, 156 U.S. 47, 49, 50,

---

* The narrower provisions of § 2 of the Act of 1898 to which 2, sub. a(21) was added by the Act of 1938, were thought insufficient to confer jurisdiction against adverse claimants except within the restrictions of § 23. Bardes v. Hawarden Bank, 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed. 1175.

15 S.Ct. 266, 39 L.Ed. 341; or by ancillary proceedings, White v. Ewing, 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67. Compare Kelley v. Gill, 245 U.S. 116, 119, 38 S.Ct. 38, 62 L.Ed. 185. And it may, despite section 265 of the Judicial Code (28 U.S.C.A. § 379), issue under section 262 (28 U.S.C.A. § 377), or otherwise, all writs necessary to protect from interference all property in its possession. Julian v. Central Trust Co., 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629."

■ The possession of this jurisdiction by the bankruptcy court in a reorganization proceeding is confirmed by the provisions of Ch. X. § 115, 11 U.S.C.A. § 515, provides that upon the approval of the petition in reorganization proceedings, the court shall have in addition to the jurisdiction, powers and duties of a bankrupt court, all the powers which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature; and §§ 187 and 188, 11 U.S.C.A. §§ 587 and 588, permit a trustee or debtor in possession, if authorized by the judge, to exercise such rights and powers as a receiver in equity would have if appointed by a federal court. Heretofore, the dependent jurisdiction of the courts of bankruptcy was restricted by § 23 and by the rule of comity, but now that § 23 is no longer applicable to reorganization proceedings under Ch. X, and the power to interfere in a prior court proceeding has been conferred upon the bankruptcy court by Congress in the exercise of the bankruptcy power, it seems clear that the bankruptcy court under Ch. X has jurisdiction to entertain all suits to which its trustee or the debtor in possession is a party, even though they be instituted against adverse claimants. See Finletter, The Law of Bankruptcy Reorganization, 1939 Ed. p. 181. It is significant that in Kelley v. Gill, 245 U.S. 116, 38 S.Ct. 38, 62 L.Ed. 185, the jurisdiction of the bankruptcy court to entertain a dependent suit in equity to enforce the collection of unpaid stock subscriptions due a bankrupt corporation was denied because of the applicable provisions of § 23.

■ It does not follow, however, that the jurisdiction of the bankruptcy court over suits against an adverse claimant may be summarily exercised.[1] The statute does not so provide;[2] and under the well established procedural rule of the ordinary bankruptcy courts, as we have seen, suits by a trustee to recover property from an adverse claimant in possession must take the form of a plenary action. This is especially true when the title to property is in dispute. The rule was applied in Taubel, etc., Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770, where the court discussed the bearing of §§ 67, sub. e, 60, sub. b and 70, sub. e of the Bankruptcy Act, which confer jurisdiction upon the bankruptcy court under certain circumstances over suits by trustees for the recovery of property in the possession of adverse claimants under conveyances from the bankrupt. Although the jurisdiction of the court was beyond dispute, the necessity for plenary suit was emphasized. (264 U.S. page 434, 44 S.Ct. 396, 68 L.Ed. 770). As to the power of Congress in the premises, the court said (page 430, of 264 U.S., page 398 of 44 S.Ct., 68 L.Ed. 770): "Congress has, of course, power to confer upon the bankruptcy court jurisdiction to adjudicate the rights of trustees to property adversely claimed. In matters relating to bankruptcy its power is paramount. Hence, even if the property is not within the possession of the bankruptcy court, Congress can confer upon it, as upon any other lower federal court, jurisdiction of the controversy, by conferring jurisdiction over the person in whose possession the property is. Congress has, also (subject to the constitutional guaranties), power to determine to what extent jurisdiction conferred, whether through possession of the res or otherwise, shall be exercised by summary proceedings and to what extent by plenary suit. But Congress did not, either by section 2, section 23 of the Bankruptcy Act of 1898 or any other provision of the act, confer generally such broad jurisdiction over claims by a trustee against third persons. Nor has it provided in terms, that a substantial adverse claim to property which is not in the possession of the bankruptcy court, and which is demanded by the trustee under subdivision 'f'

---

[1] As to the differences between summary and plenary suits, see Louisville Trust Co. v. Comingor, 184 U.S. 18, 25, 22 S.Ct. 293, 46 L.Ed. 413; Central Republic Bank & Trust Co. v. Caldwell, 8 Cir., 58 F.2d 721, 731.

[2] Compare the express provisions of §§ 50, sub. n, 57, sub. l and 67, sub. a, 11 U.S.C.A. §§ 78, sub. n, 93, sub. l, and 107, sub. a.

of section 67, may be litigated, without consent, by a summary proceeding. To sustain the judgment under review, a specific grant of power to so deal with such a controversy must be shown."

These cases related to ordinary bankruptcy procedure, and are not conclusive here. The bankruptcy court in reorganization proceedings under § 77B, 11 U.S.C.A. § 207, had, and under Ch. X of the 1938 Act now has a wider control, that comprehends not only property of the debtor in his actual or constructive possession, but also property of the debtor in the hands of lien holders. The formulation of a plan of reorganization contemplates a readjustment of secured as well as unsecured debts, and so the summary power of the court extends to all of the debtor's property that can be affected by a plan, whether or not the property is in his possession. Thus in Continental, etc., Bank & Trust Co. v. Rock Island Ry., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110, in a proceeding for the reorganization of a railroad under § 77, 11 U.S.C.A. § 205, the court granted an injunction in a summary proceeding against certain banks which held the bonds of the railroad as collateral and enjoined a sale of the collateral during the pendency of the procedure. The propriety of a summary rather than a plenary proceeding was sustained because an adverse claim to the property was not involved. The court said (page 681 of 294 U. S., page 608 of 55 S.Ct., 79 L. Ed. 1110): "It is next contended that the court was without power to issue the injunction in a summary proceeding. Obviously, an application for an injunction against the immediate enforcement of a remedy is not the assertion of an adverse claim. The bonds deposited as collateral were not in the hands of purchasers, but in the hands of creditors as security. That the equity which the debtor retained was a property interest was not and could not be disputed by the creditors; nor was the claim of the creditors in respect of their rights in the collateral security or the rank of their liens questioned by the debtor. In short, no adverse claim was brought forward by either of the parties to the controversy. The only question was in respect of the creditors' remedy; and the sole point is as to the authority of the bankruptcy court to delay for a reasonable time an interference with the reorganization proceeding which would result from an immediate sale of the collateral. The court below dealt adequately with the situation, and its conclusions find ample support in the decisions. See, for example, In re Purkett, Douglas & Co. (D.C.) 50 F.2d 435, 438; John Matthews, Inc. v. Knickerbocker Trust Co. [2 Cir.] 192 F. 557; Allebach v. Thomas [4 Cir.] 16 F.(2d) 853."

See also, In re Prudence-Bonds Corp., 2 Cir., 77 F.2d 328; Grand Boulevard Inv. Co. v. Strauss, 8 Cir., 78 F.2d 180; In re Argyle-Lake Shore Bldg. Corp., 7 Cir., 78 F.2d 491; In re Frances E. Willard Natl. Temperance Hospital, 7 Cir., 82 F.2d 804; In re Prima Co., 7 Cir., 98 F.2d 952; and see Finletter, The Law of Bankruptcy Reorganization, 1939 Ed., pp. 156-166.

The pending case grows out of a reorganization proceeding under Ch. X and must be decided accordingly. The procedure is determined by the admitted facts that the fund is in the possession of an adverse holder, and the title of the fund is in dispute. If the contention of the special receiver is sustained, the reorganization court will have no interest in the fund, since in such event it will constitute no part of the debtor's estate. It follows that recovery of the fund may be sought only in a plenary suit.

The order of the District Court might be reversed simply on the ground that it was based upon inadequate procedure; but it is desirable to add, in order to speed the settlement of the bankrupt estate, that under the undisputed facts the trustee in bankruptcy has no interest in the fund that would justify a turnover order in any form of action. Indeed it is difficult to decide one question without deciding the other. The record shows that the sinking fund for the benefit of the bondholders was established when the receivership for the benefit of creditors generally came to an end. Under the decree of the state court this fund that the debtor was obligated to accumulate for the retirement of the bonds was taken from its control and entrusted to the special receiver. This action amounted to an appropriation of the fund to the purpose specified, so that the corporation parted with all title thereto. Indeed the fund was established by the decree of the court which directed the payment of the surplus in the hands of the operating receiver to the special receiver, and this step was taken to compensate in part for the debtor's prior failure to observe the cove-

nant in the bond. The subsequent payments by the corporation to the receiver of small amounts to be added to the fund were in the same category; and it was the clear intent of the decree to vest the full ownership of the whole fund in the bondholders. The subsequent use of the fund in the purchase of bonds at varying discounts under the order of the court was of benefit to the debtor and did not provoke any opposition on its part or on the part of the bondholders. It was in any event a matter of which the state court had sole control in the execution of its decree.

A sinking fund under a bond mortgage is a trust fund, the title to which passes from the debtor to the trustee who holds it for the benefit of the bondholders. Equitable Trust Co. v. Green Star S. S. Corp., D.C., 291 F. 650, affirmed 2 Cir., 297 F. 1008; Rogers Locomotive, etc., Works v. Kelley, 88 N.Y. 234; Holland Trust Co. v. Sutherland, 177 N.Y. 327, 69 N.E. 647. So it has been held that the debtor retains no interest in the fund that is subject to the attack of other creditors, and that a receiver appointed under a creditors' bill cannot gain possession of the fund and use it for the benefit of the creditors as a whole. Truby v. M. & T. Trust Co., 141 Misc. 507, 510, 253 N.Y.S. 108; Tennessee Bond Cases, 114 U.S. 663, 698, 5 S.Ct. 974, 1098, 29 L.Ed. 281; Babcock P. P. Mfg. Co. v. Ranous, 164 N.Y. 440, 58 N.E. 529; First Union Trust & Savings Bank v. Bernardin, 8 Cir., 60 F.2d 419. Applying the principle of these decisions, we conclude that the ownership of the fund was finally adjudicated by a court of competent jurisdiction and the title passed from the debtor before the institution of the bankruptcy proceeding; and, therefore, the fund is not property of a debtor in the possession or control of a receiver appointed in proceedings not under the Bankruptcy Act, which under the terms of the act should be delivered to the trustee in bankruptcy. The retention of possession of the fund by the special receiver need not interfere with the execution of any plan of reorganization that may be formulated in accordance with the terms of the act.

The order of the District Court will be reversed and the case will be remanded with direction to dismiss the petition of the trustee upon which the turnover order was based.

Reversed and remanded.