BRIGHTON OPERATING CORP., Appellant, *v.* P. WALKER MORRISON et al., as Trustees, Respondents.

Argued June 7, 1943; decided July 20, 1943.

*Henry Epstein, Victor S. Axelroad* and *Isaac Ellman* for appellant. The extension agreement clearly comes within the terms and intent of section 1077-cc of the Civil Practice Act. Where there is no specific and clearly expressed stipulation providing for a rate of interest applicable after the maturity of an extension agreement, interest is payable at the rate specified by law. Section 1077-cc, by both its express terms and its intent, controls the rate of interest which may be charged as a matter of law, after default in the payment of the principal due on the maturity of mortgage obligations. (*Title Guarantee & Trust Co.* v. *2846 Briggs Ave.*, 283 N. Y. 512; *Mortgage Commission* v. *Fay*, 255 App. Div. 622, 281 N. Y. 637; *Klein* v. *Simons Mfg. Co.*, 261 App Div. 977, 288 N. Y. 482; *Chase Nat. Bank* v. *Guardian Realties, Inc.*, 283 N. Y. 350; *City Bank Farmers Trust Co.* v. *Ardlea Corp.*, 267 N. Y. 224; *Delaware & Hudson*

*Co.* v. *Utica C. & B. R. R. Co.,* 174 Misc. 403; *Tiernan Realty Co.* v. *Title Guar. & Tr. Co.,* 176 Misc. 1071; *Union Trust Co.* v. *Kaplan,* 249 App. Div. 280; *Levinson* v. *Rosovsky,* 263 App. Div. 793, 288 N. Y. 559.) Interest at the rate of six per cent cannot be demanded, as a matter of contract, for the reason that there is no express provision in the instant extension agreement stipulating a six per cent interest rate on the unpaid principal remaining after maturity. (*Eltan Realty Co.* v. *Irving Trust Co.,* 252 App. Div. 282; *Royal Court Realty Co.* v. *Thomas,* 259 App. Div. 313; *O'Brien* v. *Young,* 95 N. Y. 428; *De Clow* v. *Haverkamp,* 198 App. Div. 83; *Atwater & Co.* v. *Panama R. R. Co.,* 246 N. Y. 519; *Clason's Point Land Co.* v. *Schwartz,* 237 App. Div. 741; *Harnickell* v. *Omaha Water Co.,* 146 App. Div. 693; *Philsim Realty Corp.* v. *Fulton Trust Co.,* 136 Misc. 845; *Wilson & English Constr. Co.* v. *N. Y. C. R. R. Co.,* 240 App. Div. 479; *Union Estates Co.* v. *Adlon Constr. Co.,* 221 N. Y. 183; *Sands Realty Co.* v. *Schmuck,* 90 Misc. 631; *Daily Realty Co.* v. *Schmuck,* 90 Misc. 631.) The mortgagor is not estopped from raising the question of the legality of the six per cent interest rate demanded by the mortgagee. (*Brown* v. *Bowen,* 30 N. Y. 519; *Harbeck* v. *Pupin,* 145 N. Y. 70; *Hopwood Plays, Inc.,* v. *Kemper,* 263 N. Y. 380; *Pagel, Horton & Co., Inc.,* v. *Harmon Paper Co.* 236 App. Div. 47; *Parsons* v. *Lipe,* 158 Misc. 32; *Brewster* v. *Striker,* 2 N. Y. 19; *Hungerford Brass & C. Co.* v. *Brigham,* 47 Misc. 240; *Sturm* v. *Boker,* 150 U. S. 312; *Mutual Life Ins. Co.* v. *Phinney,* 178 U. S. 327; *Tiernan Realty Co.* v. *Title Guar. & Tr. Co.,* 176 Misc. 1071.) The court has the power to render a declaratory judgment in the instant case. (*New York Operators* v. *State Liquor Authority,* 285 N. Y. 272; *James* v. *Alderton Dock Yards,* 256 N. Y. 298.)

*David L. Weissman* and *Barnet Kaprow* for respondents. The defendants are entitled to interest at the rate of six per cent by virtue of paragraph 15 of the extension agreement. (*Title Guaranty & Trust Co.* v. *2846 Briggs Ave.,* 284 N. Y. 685.) To sanction the mortgagees' charge of six per cent in cases where there is no reverter clause would permit them to increase the interest rate solely by reason of the maturity of the obligation, which the statute condemns; to sanction an interest rate of six per cent in the present case would merely be to enforce

the parties' agreement, which the statute does not and could not condemn. (*Royal Court Realty Co.*, v. *Thomas*, 259 App. Div. 313; *Hammond* v. *Lawrence Investing Co.*, 262 App. Div. 900; *Insurance Co.* v. *Dutcher*, 95 U. S. 269; *Woolsey* v. *Funke*, 121 N. Y. 87; *Carthage T. P. Mills* v. *Vil. of Carthage*, 200 N. Y. 1.) The defendants are entitled to interest at the rate of six per cent because section 1077-cc is inapplicable to extension agreements made after its enactment. (*Franklin Title & Mortgage Guaranty Co.* v. *Shernov*, 250 App. Div. 267.) Assuming that there is a question whether the defendants are entitled to an interest rate of six per cent, the doctrines of unclean hands and estoppel preclude the plaintiff from raising that question. (*Imperator Realty Co.* v. *Tull*, 228 N. Y. 447; *Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458; *N. Y. Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Steinway* v. *Steinway*, 24 App. Div. 104; *Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40.) Sections 1077-cc and 1077-d would be unconstitutional if applied to the situation presented by the case at bar. (*Chastleton Corporation* v. *Sinclair*, 264 U. S. 543; *Perrin* v. *United States*, 232 U. S. 478; *Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398.) The plaintiff is not entitled to the benefits of sections 1077-cc and 1077-d of the Civil Practice Act because these sections were not intended for persons like the plaintiff. (*City Bank Farmers Trust Co.* v. *Ardlea Corp.*, 267 N. Y. 224.) In the circumstances of this case, the court was in any event justified in declining to pronounce a declaratory judgment in favor of the plaintiff. (*James* v. *Alderton Dock Yards*, 256 N. Y. 298.)

RIPPEY, J. On May 19, 1936, defendants, as trustees duly appointed pursuant to a plan of reorganization for certain mortgage investments, became owners by assignment of a bond and mortgage executed July 17, 1928, by Clover Construction Corporation to the New York Title and Mortgage Company to secure the payment of the sum of $250,000, with interest at the rate of six per cent per annum payable semi-annually. The indebtedness originated simultaneously with the mortgage upon real property which was located on Hubbard Street in the Borough of Brooklyn, City of New York.

On September 3, 1936, the defendants and Lenox Properties, Inc., the then owner of the property covered by the mortgage,

by authority of the Supreme Court entered into an extension agreement by which the time for the payment of the principal sum then remaining unpaid was extended to June 30, 1939, and the interest rate was reduced from six per cent to five per cent per annum for the extended period. As consideration for the extension, the owner was required to perform various conditions which need not be detailed here. The provision with respect to the reduction of the interest rate provided that the owner agreed " in consideration of the extension and modification herein granted and the reduction of the interest rate on the bond and mortgage described herein from 6% per annum to 5% per annum, that upon default in the payment of any semiannual instalment of principal as provided for herein, and should such default continue for a period of twenty (20) days, then, in addition to any of the remedies herein granted to the party of the first part by reason of such default, and not in limitation of any of said remedies, the interest rate on the said bond and mortgage shall, at the option of the party of the first part, from and after the expiration of twenty days after such default, revert to the rate of 6% per annum, which the party of the second part covenants and agrees to pay, it being understood and agreed that the extension and modification of the bond and mortgage and the reduction of interest rate herein granted, is conditioned upon the compliance by the party of the second part with the provisions of this agreement on its part to be performed and that the party of the first part has been induced to extend and modify this mortgage and to reduce the interest rate and to ask for and obtain approval of the Court thereto, in consideration of the agreement by the party of the second part to comply with all the terms hereof.''

During the running of the extension agreement there was no default in the payment of any semiannual installment of principal or in the payment of interest at the rate of five per cent as and when it became due and the mortgagor complied in full with all of the conditions of the agreement on its part to be performed. Accordingly, no default of the owner or mortgagor of the property gave rise to the right of defendants to exact more than five per cent interest prior to June 30, 1939 — the expiration of the extension agreement for payment of the unpaid principal which then became due.

The defendants claimed, however, that the failure of the mortgagor to pay the full amount of the principal sum due on June 30, 1939, according to the terms of the extension agreement and the original bond and mortgage, brought about a reversion of the interest rate from five per cent to six per cent per annum thereafter. On September 30, 1940, the plaintiff acquired title to the property and assumed and agreed to pay the mortgage indebtedness. The interest on the mortgage by the terms of the extension agreement was payable quarterly on the first days of September, December, March and June of each year and the mortgage was not in default in any respect except as to the payment of the principal sum on September 1, 1940. On November 26, 1940, the plaintiff duly tendered to the defendants the full amount of interest for the three-month period expiring November 30, 1940, at the rate of five per cent, which tender the defendants refused to accept.

Upon the foregoing state of facts, the plaintiff brought this action for a judgment declaring that, by virtue of the provisions of section 1077-cc of the Civil Practice Act, the defendants may not legally increase the rate of interest above five per cent per annum, the rate fixed by the extension agreement, during the emergency period fixed by the Legislature, that the tender made was in the proper amount, and that the defendants be enjoined from demanding, during the emergency period as fixed by the Legislature, a rate of interest in excess of five per cent per annum on the principal of said mortgage and from declaring and demanding payment of the entire principal due and commencing an action to foreclose the mortgage for failure to pay the same or interest on the amount due thereon at the rate of six per cent per annum during the emergency period. The defendants filed their answer admitting the tender as alleged by the plaintiff and their refusal to accept the same and set up various defenses which included, among others, the defense of estoppel by virtue of interest payments at the rate of six per cent subsequent to June 30, 1939.

To the time of the commencement of this action, none of the conditions specified in the extension agreement by which it was stipulated that interest should revert from five per cent per annum to six per cent per annum arose except failure by the mortgagor to pay in full the principal sum due at the expira-

tion date of that agreement. Interest on the obligation had been timely paid in full or duly tendered at the rate specified in the extension agreement to its expiration date and thereafter to a date subsequent to the commencement of this action. Accordingly, an increase of the rate of interest beyond five per cent per annum was barred during the emergency period by section 1077-cc of the Civil Practice Act (*Mortgage Commission* v. *Fay*, 281 N. Y. 637; *Metropolitan Sav. Bank* v. *Tuttle*, 290 N. Y. 497), and no action to foreclose the mortgage for failure to pay the principal indebtedness at maturity could be commenced (Civ. Prac. Act, § 1077-a) or suit brought on the bond (§ 1077-b). Any waiver of the protection of the foregoing sections of the Civil Practice Act was void and unenforcible (Civ. Prac. Act, § 1077-d).

In view of the conclusions above reached we do not consider or pass upon any other question.

The judgments should be reversed and the case remitted to the Supreme Court for further proceedings in accordance with this opinion, with costs to the appellant in all courts. (See 291 N. Y. 670.)

LEHMAN, Ch. J., LOUGHRAN, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Judgment accordingly.