## Application of 80 JOHN STREET CORPORATION.

District Court, S. D. New York.
Oct. 9, 1946.

252

William H. Hickin, of New York City, Trustee.

George Zolotar, of New York City (Ezra Weiss, of New York City, of counsel), for Securities and Exchange Commission.

Chadbourne, Wallace, Parke & Whiteside, of New York City (Charles B. Lauren, of New York City, of counsel), for Manufacturers Trust Co.

Rathbone, Perry, Kelley & Drye, of New York City (Francis S. Bensel, of New York City, of counsel), for Central Hanover Bank & Trust Co.

Reeves, Todd, Ely & Beatty, of New York City (Edwin M. Slote, of New York City, of counsel), for debtor.

CONGER, District Judge.

The Central Hanover Bank and Trust Company is the owner and holder of a consolidated first mortgage on debtor's premises, 80 John Street Corporation, New York City.

The moving party herein is the duly appointed and acting Trustee in proceedings for the reorganization of debtor under Chapter X, Bankr.Act, 11 U.S.C.A. § 501 et seq.

The Trustee has brought on this proceeding by an order to show cause and petition designated a "Petition for Declaratory Judgment."

The main prayer for relief is that it be adjudicated that the interest rate on the said mortgage be 3½ per cent per annum in lieu of 4½ per cent per annum as claimed and demanded by the mortgagee.

Central Hanover has answered and brought on a motion for an order dismissing the petition of the Trustee on the ground that this Court lacks jurisdiction over the subject matter and that it fails to state a claim for which relief can be granted.

The matter was argued before me. No testimony was taken. It was apparently conceded by everyone interested that no formal testimony was necessary. There is no dispute of fact, but there are serious questions of law.

The first question to be decided is whether or not I have any power at all to entertain this petition and to pass on the issues involved.

Central Hanover contends that this Court is without jurisdiction upon this application, which is in the nature of a summary proceeding, to enter a declaratory judgment for the relief prayed for, especially as to the request that the so called excess interest, paid before the filing of the petition, be declared to have been paid on account of interest accrued or accruing.

The Bank claims that it is in the position of an adverse claimant in possession whose claim is bona fide and not colorable only and that, therefore, the Trustee must proceed by plenary action and may not litigate the rights of the parties upon petition in a summary proceeding.

There is an actual dispute between the Trustee and the Bank. There is the claim that on one hand the interest should be 3½ per cent and on the other that it should be 4½ per cent.

The issue we have here really is part of the Bank's claim against the debtor. Were we at the stage of passing on a plan of reorganization of this corporation, I certainly would have the right summarily to pass on the amount of the Bank's claim. In essence I am doing that here. The question of the correct rate of interest affects the amount of the Bank's claim.

It was intended by Chapter X to enlarge the Court's jurisdiction in matters affecting the debtor estate. It abrogated the

restrictions found in the provisions of law relating to ordinary bankruptcy practice in Section 23 of the Act, 11 U.S.C.A. 46.

I have come to the conclusion that I have jurisdiction to determine summarily this question, at least in so far as it concerns the rate of interest paid and to be paid by the Trustee on these mortgages.

An extended discussion of this point is not necessary. It seems to me that the disputed questions are all answered by In re Cuyahoga Finance Co., 6 Cir., 136 F.2d 18.

I have grave doubts that I may summarily find in this proceeding that the Hanover Bank will be compelled to refund and return to the debtor estate moneys which it received from the debtor prior to the institution of this Chapter X proceeding. While it is true that this Court has jurisdiction over that question, I am inclined to the belief that recovery may only be had by plenary action to recover the money so paid. For an interesting discussion of this subject, see Warder v. Brady, 4 Cir., 115 F.2d 89.

There is nothing improper in the form of this proceeding.

In proceedings under this Act, great liberality as to form and substance of the pleadings may be indulged in when determining rights and they may be informal so long as they state with reasonable and substantial certainty the claims of the respective parties. Cuyahoga, supra. That was done in this case.° All of the parties interested were in Court. The pleadings were ample and complete as to the issues involved. There was no dispute of fact and hence no testimony was taken. All of the parties involved, including the Central Hanover Bank, had a full hearing on the issues involved, even though the claim of the Trustee was presented in a summary way.

We now pass to the main question, i.e. what is the correct rate of interest to be paid on this mortgage by the Trustee? The Trustee bases his claim to the lower interest rate by reason of Section 1077-cc of the Civil Practice Act of the State of New York.

This section is part of the General Mortgage Moratorium Statute of the State of New York enacted to provide relief for debtors during the financial emergency. The section provides:

"Notwithstanding any inconsistent provisions of this act or of any other general or special law, the rate of interest upon any loan, indebtedness, bond, extension agreement, collateral bond, or other evidence of indebtedness or liability, if the indebtedness originated or was originally contracted for simultaneously with a mortgage upon real property and is secured solely by such mortgage, shall not be increased by reason of the maturity of such obligation during the emergency period as defined in section ten hundred seventy-seven-g of the Act, but shall continue after such maturity at the rate specified in such obligation until the expiration of such emergency period."

The Trustee relies upon a letter agreement signed by the Bank and the debtor, dated August 25, 1943, permitting the debtor to pay a lower rate of interest (3½ per cent) on said bond and mortgage for the period of a year, to October 1, 1944.

In order to determine this question, one should go back a few years and examine the dealings between the parties.

On May 13, 1937, the debtor was the owner of the real estate, 80 John Street Corporation, upon which there was this consolidated first mortgage in the sum of $1,589,-500, with interest at 5 per cent per annum held by Central Hanover. On the aforesaid date, the debtor and Central Hanover, entered into an agreement in writing. The instrument purported to be and was a formal extension agreement. In and by this agreement, in addition to other provisions, Central Hanover agreed to extend the time for the payment of the said bond and mortgage from October 1, 1936, to October 1, 1939.

In said agreement it was expressly stated that the due date of the said bond and mortgage was extended on condition that the debtor during the said extended term pay interest on the principal amount at the rate of 5 per cent per annum (payable quarterly).

It was further stipulated in said agreement that Central Hanover would accept

4½ per cent interest instead of 5 per cent as payment in full for the interest due each quarter, provided the debtor would pay certain amortization amounts on the principal of the mortgage and provided there were no defaults in compliance with any other requirements of the agreement.

I am informed that the terms of this agreement were complied with by both parties.

This was the last agreement between the parties which in express terms was designated an extension agreement and which by its terms expressly extended the due date of said bond and mortgage.

Thereafter that which transpired each year between the parties was by means of letter writings—five of them in all. The first provided for the period of October 1, 1939, to October 1, 1940, and the last for the period of October 1, 1943, to October 1, 1944. I am informed that the terms imposed on debtor by these agreements have been kept.

All of these letter agreements are substantially similar in form and substance. The Trustee bases his claim here upon the last letter agreement.

The Trustee claims that these letter agreements were and should be construed as extension agreements, by which the maturity of the consolidated first mortgage was extended, and further contends, that since the last of said agreements, which expired on October 1, 1944, provided for the payment of interest at the rate of 3½ per cent per annum, Central Hanover was, and is, precluded by the provision of 1077-cc from demanding or receiving interest at the rate of 4½ per cent as fixed in the extension agreement of May 13, 1937, for the period subsequent to October 1, 1944.

Central Hanover on the other hand contends that these letter agreements were nothing more than an agreement to accept a lower rate of interest for a limited period of time and could in no way be considered as "extension agreements" or instruments which in any way affected the maturity of the said bond and mortgage.

■ The question I have here has given me considerable trouble. My decision must be governed by the law of the State of New York and rulings of its Courts.

■ I think my first objective is to classify these letter agreements. I have come to the conclusion that they are not "extension agreements"; that they do not affect the maturity of the bond and mortgage; that they were intended simply to provide, for a limited period, for a lower rate of interest.

In arriving at this conclusion, I am not influenced in any way by the informality of the documents.

I am of the opinion that this bond and mortgage became due and *matured*, by and under the extension agreement of May 13, 1937, on October 1, 1939; that the maturity date has not been changed by the later letter agreements. It is significant that in the first letter agreement, we find this statement: "This mortgage will mature on October 1, 1939." We find no such language in the other letter agreements. We do find this, however, in the last one of August 25, 1943, and substantially the same in each of the others: "It is and will be our mutual intent that such arrangement will not constitute a reduction of the 5 per cent interest rate now in force or any extensions of the maturity date of the mortgage indebtedness."

I may not read into this agreement in the face of those words just the opposite. Neither do I regard this restriction as to the maturity date as illegal and contrary to the laws of the State of New York.

■ It would be contrary to public policy and unenforceable for the mortgagor here to waive the protection intended to be afforded him by the New York code section forming part of the general moratorium statute. If I am correct, it has not done so. The debtor was simply offered and accepted an opportunity, under certain conditions, to pay a lower rate of interest than that provided for in the bond and mortgage and in the extension agreement of May, 1937.

When the last letter agreement expired in October, 1944, the mortgagee was powerless to obtain the principal of said bond and mortgage during the period of the emergen-

cy, if the mortgagor paid the interest. It could not foreclose; neither could it sue on the bond 1077-a, 1077-b, Civil Practice Act.

The mortgagor was protected as far as the principal was concerned, but of course he must pay the interest. I regard these letter agreements as nothing more than a consent, under certain conditions, to accept a lesser sum by way of interest than they were entitled to.

When the bond and mortgage matured, the interest rate to which Central Hanover was entitled under the extension agreement was 4½ per cent. That, but for the letter agreement they could still demand, but no more.

The Trustee relies greatly upon Brighton Operating Corp. v. Morrison, 291 N.Y. 6, 50 N.E.2d 283. I do not regard that case as controlling here. There the Court of Appeals was construing the effect of an agreement which not only provided for a reduced interest rate but which expressly extended the time of the payment of the mortgage indebtedness and there was in addition an express agreement on the part of the mortgagor to pay the mortgage debt.

The agreement in question in the Brighton case fits squarely within 1077-cc of the C.P.A. The letter agreement here being considered not only did not extend the maturity of the mortgage, but provided that the maturity thereof should remain unaffected.

Were the Trustee here basing his claim to reduced interest upon the extension agreement of May 13, 1937, the Brighton case would be ample authority for his contention.

The Trustee has cited other cases to support his theory. They, however, may be distinguished upon the facts. I do not regard those cases as controlling here.

It seems to me that Title Guarantee &

Trust Co. v. 2846 Briggs Avenue., 283 N.Y. 512, 29 N.E.2d 66, 69, more closely approximates the situation found here. There the Court in passing on a certain letter characterized it not as an extension agreement but as "a waiver of interest for a specified time."

The prayer of petitioner is denied in all respects in so far as it asks relief based upon the contention of the Trustee that the interest rate upon the consolidated first mortgage has been, is and should be 3½ per cent per annum instead of 4½ per cent.

In view of the above, it is unnecessary to pass on that part of the petition of the Trustee wherein he asks that the order of January 24, 1946, be resettled in certain respects. This order of January 24, 1946, amended an order of January 10, 1946. In and by those orders I directed Trustee to pay to the Central Hanover $16,227.38 for interest due on the consolidated first mortgage on October 1, 1945. This amount was based on a 4½ per cent rate. It is only fair to say, however, that had I found in this proceeding that 3½ per cent was the proper rate of interest, I feel that the aforesaid two orders would in no way preclude me. When the application for the payment of the interest was made, the rate of interest was not in issue. We were only interested in determining whether at the time any interim allowance of interest should be granted. The question of the rate of interest was discussed, however, at the time by the attorney for Central Hanover, by the Trustee and by me. My recollection is that it was understood at the time that a request was to be made to Central Hanover to make this reduction in interest and if refused by it the Trustee, if he felt the facts and the law warranted it, would make application to the Court for the reduction.

Settle decree in accordance with the above.