In the Matter of PRESTON MINING COMPANY, Inc., Debtor.

No. 26487.

United States District Court
E. D. Pennsylvania.

Jan. 19, 1962.

M. E. Maurer, Philadelphia, Pa., for trustee.

John W. Fawcett, 3rd, Philadelphia, Pa., for A. T. Massey Coal Co.

VAN DUSEN, District Judge.

Approximately a year after the VOLUNTARY PETITION UNDER CHAPTER X was filed in this case, the trustee filed this Petition, requesting that the creditor (A. T. Massey Coal Company, Inc.) having an outstanding lien on the primary asset (cleaning plant and tipple) of the debtor, which might be productive of income, show cause why an order should not be entered against it requiring it to make available, at its place of business in Richmond, Va., to the trustee, and accountants acting in the trustee's behalf, all records of the sales transactions between the debtor and the said creditor having a lien on such primary asset (Document No. 28). After receipt of a copy of the above-mentioned Petition

and attached Rule to Show Cause, sent by certified mail to its office in Richmond (see Document No. 30), the A. T. Massey Coal Company, Inc. has appeared specially, contending that this court has no jurisdiction to enter any order requiring it to make the requested records available to the trustee or his accountant.

The above-mentioned creditor has been the exclusive selling agent for the debtor's coal and, in this capacity, has acquired an unsecured claim against the debtor as well as a claimed lien upon the cleaning plant, tipple, and mining machinery of the debtor in an amount in excess of $200,000 (par. 4 of Document No. 26). The trustee (an experienced, retired coal company executive) has stated that the clause under which this creditor has been establishing the price for which it has sold the debtor's coal, and pursuant to which the above unsecured claim and alleged lien are stated to have been acquired,[1] is a most unusual one (see testimony at hearing of 1/17/62 and Exhibit P-1).[2] One of the largest Philadelphia law firms has made this statement:

> "There is a serious question as to whether Massey was actually acting as a selling agent or whether he was in effect purchasing the coal for himself at a price less than could be obtained on the market. Nevertheless, Massey charged Preston with full sales commissions." (See pp. 1–2 of Exhibit A to Document No. 26).

Also, the contract contains this language:

> "(c) Agent agrees to keep at all times complete and accurate books of accounts, and proper vouchers evidencing its sales of said coal, which

---

[1] Some "advances" were made to the debtor by the Massey Company (see par. 4 of Document No. 28).

[2] Rather than placing the control of the price specifically with the producer as is usual, this clause provides:

"(2) (a) Agent agrees that it will at all times during the life of this agreement use its best efforts to sell all of

Principal's coal which is covered by this agreement and to obtain therefor prices which are in the best interests of Principal; provided, however, that Agent shall enter into no agreement for the delivery of coal over a period of more than twelve (12) months from the date thereof, unless such agreement has been approved in writing by Principal."

books and vouchers and all other papers relative to the transactions and business of Principal hereunder, shall at all times during regular business hours be open to the inspection of any duly authorized agent of Principal." (Par. 3 of Document No. 28.)

The trustee has made this statement in a Petition For Leave To Employ An Accountant, which has been granted:

"3. From information which he has acquired, it would appear that the employment of accountants is particularly necessary to investigate the transactions between the debtor and its selling agent, A. T. Massey Coal Company." (Par. 3 of Document No. 26.)

The record discloses that the Small Business Administration, by Authorization bearing Docket No. L163,343 Rich., has approved the debtor's request for a loan of $350,000 for new capital (par. 3 ff. of Document No. 25), subject to certain conditions and limitations, and that the debtor is in negotiation with a third party who may submit a proposition for the reorganization of the debtor and may utilize the Authorization (par. 6 of Document No. 27). However, this third party will not participate in any reorganization of the debtor until a determination is made of the debit and credit position of the debtor and the A. T. Massey Coal Company, Inc. (par. 6 of Document No. 27).

█ Under § 111 of the Bankruptcy Act (11 U.S.C.A. § 511), this court has "exclusive jurisdiction of the debtor and its property, wherever located." This cleaning plant, tipple and machinery on which this creditor asserts a lien are subject to the jurisdiction of this court, even though located in Virginia. Collier states that the purpose of this section is "to render the authority and control of the reorganization tribunal paramount and all-embracing to the extent required to achieve the ends contemplated by Chapter X; * * *." [6 Collier (14th Ed.) p. 572].

At 6 Collier (14th Ed.), p. 601, the following language is used:

"Accordingly, exclusive jurisdiction over the debtor and its property, wherever located, carries with it —as we have already seen—the power to protect that property and adjudicate all claims and interests relating to it and this includes 'by necessary inference' the power to send process to that end for service upon the persons affected 'wherever they may be found within the United States.' The usefulness of corporate reorganization would be greatly minimized if the Reorganization Court were powerless when exercising its summary jurisdiction to send its process into any state when necessary to effectuate the purpose of the statute. Indeed, such interpretations would be in the very teeth of the expressed intent of Congress."

See, also, Warder v. Brady, 115 F.2d 89, 93 (4th Cir.1940); In re Standard Gas and Electric Co., 139 F.2d 149 (3rd Cir. 1943); In re Cuyahoga Finance Co., 136 F.2d 18, 20–21 (6th Cir.1943).

Section 167 (11 U.S.C.A. § 567) provides:

"The trustee * * *

"(1) shall, if the judge shall so direct, forthwith investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceeding or to the formulation of a plan, and report thereon to the judge;

"(2) may, if the judge shall so direct, examine * * * any other witnesses concerning the foregoing matters or any of them;

"(3) shall report to the judge any facts ascertained by him pertaining to * * * mismanagement and irregularities, and to any causes of action available to the estate; * *."

The trustee has reported, in accordance with (3), the unusual nature of this sales

agency agreement and that "a substantial doubt has arisen regarding whether or not Massey is a creditor entitled to the lien on the building and machinery or a debtor which is not entitled to the lien and which, in addition, may owe a further sum to the estate." (Par. 6 of Document No. 28). The trustee has further reported in pars. 7–9 of Document No. 28:

"7. In order to determine whether Massey is a creditor or debtor on the instant estate, an examination of Massey's sales records is required for the purpose of ascertaining whether Massey sold the coal as the debtor's agent or acted as an undisclosed buyer instead of as an agent; the sale price of the coal involved and other relevant information.

"8. The Court has heretofore authorized the Trustee to employ Main & Company for the purpose of making such an examination and your petitioner, acting through counsel, has communicated to Massey his desire of having Main & Company examine Massey's records relating to its sales transaction for the debtor, and has invoked, in connection with his request, the provision of the sales contract above quoted.

"9. Massey, acting through counsel, has indicated such an examination would not be permitted without an Order of Court."

The trustee has the duty to investigate the possibility of mismanagement of, and irregularities in the conduct of, the debtor's business by its sales agent under the above-mentioned contract and the financial relationship between the debtor and this sales agent. In re Philadelphia & Reading Coal & Iron Co., 105 F.2d 354 (3rd Cir.1939), where the court said at page 356:

" * * * the duty of the court to direct the investigation of all substantial allegations of mismanagement and fraud is plain. It is equally plain that it would not be fair to the individual creditors of a debtor for the court, before the preliminary report required of the trustee or examiner by Sec. 167(5) of Chap. X, 11 U.S.C.A. § 567(5), had been made, to permit the submission to them of a plan of reorganization which did not adequately preserve and provide for the prosecution of causes of action which might exist if such allegations of mismanagement and fraud were true."

See, also, In re Pittsburgh Rys. Co., 63 F.Supp. 7 (W.D.Pa.1945).

Under subdivision (1) of Section 167, this court may direct the trustee to investigate the "property, liabilities and financial condition of the debtor * * * and any other matter relevant to the proceeding or to the formulation of a plan, and report thereon to the judge." The trustee, if directed, may examine any witnesses concerning the foregoing matters, which includes representatives of the Massey Coal Company. Under subdivision (4) of Section 167, the trustee may employ persons such as Main & Company to assist him in performing the duties imposed upon him under Chapter X.

The A. T. Massey Coal Company, Inc. challenges the jurisdiction of the court over it and refuses to contest the petition of the trustee on the merits in this court, even though the trustee has offered to send his accountants to its place of business in Richmond, Virginia, to examine these records. The United States Court of Appeals for the Third Circuit has held that a bankruptcy court in a reorganization proceeding has jurisdiction over alleged causes of action against third persons for wrongdoing to the debtor and non-residents may be enjoined from interfering with such causes of action. See In re Standard Gas & Electric Co., 139 F.2d 149 (3rd Cir. 1943). In that case, the court said at page 153:

"The injunction issued for the protection of the res being an exercise of the bankruptcy court's summary jurisdiction, it follows that the proc-

ess necessary to render the injunction effective could proceed beyond the territorial limits of the court for service upon those to be enjoined thereby. * * * (citing cases) In fact it has been held that the service of a bankruptcy court's appropriate injunction upon the parties to a state court action is not required to render the injunction effective. See Zeleznik v. Grand Riviera Theater Co. [6 Cir., 128 F.2d 533, 536], supra. In the Zeleznik case it was said that an injunctional order, although unserved is 'a caveat to the world'. * * * They are in no position to plead freedom from the bankruptcy court's injunction by reason of their nonresidence in the district."

In this case, this court has the power to enjoin the representatives of the Massey Coal Company from interfering with any investigation by the trustee under the above-quoted Section 167 to determine if causes of action against the A. T. Massey Coal Company, Inc. for wrongdoing or other reasons exist and if irregularities or mismanagement took place in the conduct of the debtor's affairs.

In the case of In re Cuyahoga Finance Co., supra, a lien creditor having possession of the pledged assets declined to file a claim or otherwise consent to the jurisdiction of the bankruptcy court in a Chapter X proceeding, but it was held that the bankruptcy court had the power to conduct a hearing and determine the amount of the lien creditor's claim. See broad language used at page 21 of the opinion. In this petition, the trustee is not proposing to determine finally the status of the debtor's rights and obligations with respect to the Massey Coal Company, but only to make an investigation so that he can determine how to proceed and be able to report to the court.

The cases relied on by the able counsel for the Massey Coal Company are distinguishable on their facts. For example, Application of 80 John Street Corporation, 68 F.Supp. 251 (S.D.N.Y.1946), cites with approval at page 253 both In re Cuyahoga Finance Co., supra, and Warder v. Brady, supra.

The briefs on behalf of the trustee and on behalf of the A. T. Massey Coal Company, Inc. are attached to this memorandum.

At the hearing, the trial judge offered to attach any reasonable conditions to the proposed investigation and examination which A. T. Massey Coal Company, Inc. suggested, but their counsel refused to submit any such suggestions, apparently for fear of an argument that such action might constitute a waiver of his special appearance. An order directing an examination pursuant to Section 167, and enjoining the Massey Coal Company from interfering with such examination, will be made subject to modification on three days' notice in case the Massey Company wishes to make any such suggestions.